RENDERED: JUNE 28, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0202-MR

CAROL OTIS GOODWIN                                              APPELLANT


APPEAL FROM MONTGOMERY CIRCUIT COURT
v.            HONORABLE JENIFFER B. NEICE, SPECIAL JUDGE
ACTION NO. 20-CI-00082


REBECCA MASON                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Carol Otis Goodwin appeals from orders entered December 16, 2022, January 20, 2023, and February 14, 2023, by the Montgomery Circuit Court awarding primary residential custodianship of L.T.M., a minor child (Child), to Child's biological mother, Rebecca Mason (Mother). Finding no error, we affirm.

## I. BACKGROUND

Mother gave birth to Child, a male, on April 19, 2017. Child's father is deceased. Prior to Child's birth and for over two years thereafter, Mother suffered from an extensive drug abuse problem. Mother began seeking treatment for her problem at various rehabilitation facilities in 2018, and Goodwin – a close family friend – cared for Child during his Mother's treatment. By March of 2019, Goodwin was financially supporting Child and caring for him at least five days per week at her residence in Mount Sterling, Kentucky. In February 2020, Mother overdosed on heroin, was hospitalized, and ultimately checked into a new rehabilitation facility, Hope City, located in Barbourville, Kentucky. In July of 2020, Mother contacted Goodwin to inform her that she would be coming soon to pick up Child so that Child could reside with her at a Hope City transitional house for women during her rehabilitation.

On July 27, 2020, Goodwin initiated this action in Montgomery Circuit Court, seeking custody of Child. On July 28, 2020, Goodwin secured an order from the court granting her emergency custody of Child. By order entered November 9, 2020, Goodwin was declared Child's *de facto* custodian and awarded sole temporary custody, which she retained for roughly the next two years over the course of the ensuing custody proceedings. Goodwin's *de facto* custodian status is not at issue in this appeal. Mother was initially granted and exercised six hours of

-2-

visitation with Child each Saturday, and eventually granted overnights with him until she completed rehab a few months later. During the COVID-19 pandemic in late 2020 and 2021, Mother visited Child through video conferencing and by telephone. In August of 2021, Mother was granted in person visitation (supervised by her brother) every other weekend. After December 2021, Mother was granted unsupervised visitation every other weekend. During this time, Mother remained sober and drug-free.

Following the October 27, 2022, final custody hearing, the circuit court named Goodwin and Mother joint custodians of Child. Further, it named Mother the primary residential parent and awarded Goodwin timesharing with Child. These determinations were memorialized in the circuit court's findings of fact, conclusions of law, and judgment entered on December 16, 2022. On January 20, 2023, in response to Goodwin's Kentucky Rule of Civil Procedure (CR) 59.05 motion, the circuit entered an amended order with additional findings but otherwise left its ruling intact. Due to clerical errors in the January 20, 2023, order, a final agreed order was entered February 14, 2023. This appeal followed.

Additional relevant facts will be discussed in our analysis.

## II. ISSUES ON APPEAL

Goodwin does not dispute on appeal the circuit court's award of joint custody to Goodwin and Mother. Likewise, Goodwin's *de facto* custodian status

under Kentucky Revised Statutes (KRS) 403.270 is not at issue on appeal. Rather, the primary gist of Goodwin's arguments looks to the court's determination that Mother be designated as primary residential parent for Child, with Goodwin receiving inadequate timesharing.[1]

## III.  STANDARD OF REVIEW

In this case, the circuit court conducted an evidentiary hearing and made detailed findings of fact. Accordingly, to begin our review, we are guided by CR 52.01 whereupon the circuit court's findings of fact will not be disturbed unless clearly erroneous. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008). Findings of fact are not clearly erroneous if supported by substantial evidence of a probative value. *Id.* at 756. And, the lower court is in the best position to resolve issues of conflicting evidence and then determine what is in the child's best interests. *Id.* If the findings of fact are supported by substantial evidence, the court's decision will not be disturbed absent an abuse of discretion. *Id.*

Additionally, since this case looks to an initial custody determination, the designation of Mother as primary residential parent is governed by the best interests of the child standard of KRS 403.270(2). *Frances*, 266 S.W.3d at 756;

---

[1] The issue of time-sharing in a joint custody situation was addressed by the Kentucky Supreme Court in *Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008). In *Pennington*, the Court identified a subset of joint custody, referred to as "shared custody." *Id.* at 764. In a shared custody arrangement, the parents have joint legal custody, but one parent is designated the primary residential parent and the other typically exercises time-sharing with the child.

-4-

*Chappell v. Chappell*, 312 S.W.3d 364, 366 (Ky. App. 2010). Although KRS

403.270(2) does not include a definition of "best interests," it does provide a

nonexclusive list of relevant factors to be considered in a best interests

determination. KRS 403.270(2) reads as follows:

> The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare. The court shall consider all relevant factors including:
>
> (a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;
>
> (b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;
>
> (c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;
>
> (d) The motivation of the adults participating in the custody proceeding;
>
> (e) The child's adjustment and continuing proximity to his or her home, school, and community;

-5-

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

(h) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(i) The intent of the parent or parents in placing the child with a de facto custodian;

(j) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

In summation, our review of the circuit court's application of the best interests of the child factors set out in KRS 403.270(2) to the facts of this case is limited to whether the findings of the circuit court were clearly erroneous or the court abused it discretion in naming Mother as primary residential parent for Child.

ANALYSIS

Based on our thorough review of the record below, the circuit court clearly addressed the factors set out in KRS 403.270(2). The circuit court analyzed the statutory factors relevant to this case and weighed some more heavily than others in its final order of custody. For example, factors (a) and (g) were given little consideration because the wishes of Mother and Goodwin were opposed regarding primary residential custodianship; both parties disagree over Child's best interests, but love Child and have his best interests at heart; and there is no evidence of domestic violence. KRS 403.270(2). Regarding factor (c), it is uncontested that Child has good relationships with the extended families of both parties, and that it was in his best interest for those relationships to continue. KRS 403.270(2).

Goodwin asserts the circuit court erred by declining to consider factor (b). KRS 403.270(2). However, no abuse of discretion is evident in that respect because the evidence adduced was far from compelling. At the time of the final hearing, Child was six years old and, as the circuit court noted in its order, the

-7-

parties did not request the court to interview Child *in camera* due to his age. The only other evidence adduced regarding Child's wishes originated from hearsay testimony offered by his therapist, Cathy Jo Turner, which the court gave little weight.

Regarding factor (f), the circuit court stated it "was not provided any information which causes concern about the mental and physical health of the Parties aside from [Mother's] history of substance abuse[.]" January 20, 2023, Order at 5. There is no dispute that Mother has been sober and drug-free since February 28, 2020, and Goodwin does not otherwise take issue with her health. However, Goodwin makes two contentions regarding this factor relative to Child. First, she asserts the circuit court was provided ample information regarding how Child's mental health would be negatively impacted by a change of primary residential custodianship, namely, the testimony and reports proffered by Turner. As the circuit court recognized, however, Turner's evidence was of limited value. In its dispositive order, the circuit court accurately summarized Turner's evidence as follows:

> Cathy Turner testified that she was acting as a play therapist for [Child] since September 2020 when he was 3 years old. Her information from [Child] is limited due to his age but she observes him to be oriented to person and place and that they engage in nondirective play. Ms. Turner testified to observing a good relationship between [Goodwin] and [Child]; Ms. Turner has never observed [Child] with [Mother]. Ms. Turner stated that a complete

rupture of the bond between the child and [Goodwin] would be harmful. Ms. Turner further testified that she had diagnosed [Child] with adjustment disorder with anxiety, however, that was just for insurance billing purposes and that [Child] was too young to make a true diagnosis.

January 20, 2023, Order at 2-3. And, we are mindful that CR 52.01 clearly provides that this Court shall give "due regard" to the court below in weighing the credibility of the witness. Obviously, the court had little regard for Turner's assessment of Child's mental health.

Second, relevant to factor (f) of KRS 403.270(2), Goodwin argues the circuit court "failed to even analyze or acknowledge the fact that by awarding primary custody of [Child] to [Mother], the therapeutic relationship between [Child] and his therapist, Cathy Turner, which has been ongoing since September 2020, would be severed and end, or the affect that would have on L.M.'s mental health." Goodwin's Brief at 14. However, Goodwin failed to raise this issue below in either her CR 59.05 motion or in a request for additional findings pursuant to CR 52.02. Goodwin also cites nothing of record supporting that Mother would disallow therapy in the future, or that ceasing play therapy – which had been occurring at a frequency of one session every three weeks – would have a detrimental effect upon Child's mental state. Thus, we will not consider this argument on appeal. *See* CR 52.04.

Next, Goodwin asserts the circuit court should have given more weight than it did to factors (e) and (h). KRS 403.270(2). In that vein, the circuit court observed in its order that while residing with Goodwin in Mount Sterling since at least March of 2019, Child has had a suitable home, been enrolled in preschool, involved in soccer, has actively participated at Goodwin's church, and has adjusted well to Goodwin's community. Conversely, between November 2021 and entry of the circuit court's final custody order in December of 2022, Child has only spent two weekends per month with Mother in Barbourville and had less interaction or involvement with Mother's community.

But, the circuit court considered these factors and weighed them consistently within its sound discretion. Child's lack of involvement with Mother's community was, as indicated, largely a product of a prior court-ordered temporary arrangement. The circuit court also credited Mother's evidence that she has an adequate support network, maintains steady employment, and is thus able to provide financial support and a suitable home[2] for Child in Barbourville. Furthermore, the court gave weight to evidence indicating that Goodwin's custody of the Child had negatively affected Child's relationship with Mother and her family. This evidence included the distance between their residences (roughly

---

[2] Mother did not divulge her address to appellant until the day before the final hearing, but a Cabinet for Health and Family Services investigator testified that Mother's home had been inspected and deemed suitable for Child.

two-and-a-half-hour drive between Mount Sterling and Barbourville) and the acrimonious relationship Goodwin currently has with Mother. The court found that Mother has extended family who live near her in Barbourville and can assist her with childcare.

This leads to the crux of why the circuit court ultimately designated Mother as primary residential parent: The motivations of the parties when the custody relationship was initiated with Goodwin in 2018 and the likelihood that the parties would allow Child frequent, meaningful, and continuing contact with one another (*i.e.*, factors (d) and (k) of KRS 403.270(2)). The circuit court summarized the relevant evidence as follows:

> 9. [Mother] testified that she felt misled by [Goodwin] as she had always told her that [Child] belonged with his mother and was supportive of her recovery until she was ready to transition [Child] back to living with her in Barbourville, Kentucky.
>
> . . .
>
> 13. Both Parties testified that [Mother] was in active addiction when [Goodwin] offered to assist her and [Child]. When [Mother] allowed [Goodwin] to provide care for the child it appears they both believed that when [Mother] was in recovery that [Child] would return to her care and control. However, [Goodwin] testified that she believed that [Mother] would relocate near her home in Mt. Sterling so that she could continue to be a part of [Child's] life.
>
> 14. [Goodwin] testified that [Mother] was like a daughter to her and she was initially motivated to assist her in her

-11-

recovery and in raising [Child]. However, after some time her primary concern [became] [Child's] best interest and that she did not feel it was beneficial to him to relocate so far away.

15. [Mother] testified that she had never lived in Mt. Sterling and did not intend to move there. She testified that she was concerned that the Lexington area would be a trigger for her substance abuse, and she is confident in her continued sobriety if she remains near [her] family and recovery support systems.

January 20, 2023, Order at 4.

Consistent with the evidence, the circuit court found the parties' sole motivation for initially and voluntarily placing Child with Goodwin in 2018 was to permit Mother to resolve her substance abuse problem and achieve sobriety. Mother assumed Child would be returned to her at that time. However, Goodwin's motivation for subsequently filing the instant custody proceeding had less to do with Mother's demonstrated sobriety, and more to do with the fact that Mother wanted to resume her parental role with Child in a different city, which Goodwin objected to. And, Goodwin's seeming about-face in motivation for retaining custody of Child had caused her relationship with Mother to deteriorate.

This deterioration was a point of concern for the circuit court because, as the circuit court also found, it affected Goodwin's willingness or ability to allow Child "to bond freely with [Mother] and to allow frequent and meaningful contact with [Mother]." January 20, 2023, Order at 6. After Mother began having court-

ordered, unsupervised visitation, Goodwin also repeatedly accused Mother of relapsing, and made two reports of what she suspected was Mother's abuse of Child, neither of which was substantiated. Goodwin also testified that Mother and her family could visit Child "any time," but as of the final hearing, the only timesharing she was willing to concede to Mother was supervised, in Mount Sterling, every other weekend.

However, as previously stated, we are limited in reviewing the record on appeal to whether this circuit court's ruling in favor of Mother was clearly erroneous or constituted an abuse of discretion. *See Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018). Here, the record reflects the circuit court gave equal consideration to Goodwin and Mother. The court thoroughly considered the best interests of Child consistent with KRS 403.270(2), and substantial evidence of record supported the court's ultimate decision in favor of Mother. The court concluded as determinative factors, "that equal parenting time is not in the best interest of the child due to the distance between the residences of the Parties as well as the motivation of the adults in the proceeding as well as the intentions of placement with [Goodwin]." January 20, 2023, Order at 6. We find no abuse of discretion or clear error in the court's factual findings on this issue or ruling.

The final issue raised by Goodwin is her contention that, contrary to KRS 403.270(2), the circuit court did not "construct a parenting time schedule

-13-

which maximizes the time each parent or *de facto* custodian has with the child and is consistent with ensuring the child's welfare." As set forth in her brief, she

> *hereby* submits that pursuant to KRS 403.270(2) she should be entitled to far more timesharing with [Child] [than] 2 weekends a month, 15 days during the Summer and 7 days a year for holidays. To maximize the time each party has with the child, since [Mother] has the child during the week during the entire school year, [Goodwin] could be granted at least a few more weekends than [Mother]. Similarly, if [Mother] has the child during the week during the entire school year, then that leaves the entire Summer available, not just 15 days. At a minimum, [Goodwin] and [Mother] could alternate weeks all Summer or split the Summer in half as opposed to [Goodwin] having only 15 days all Summer long. Likewise, for holidays, there is simply no reason that [Goodwin] and [Mother] cannot alternate every holiday besides Christmas and equally divide the Christmas break from school, instead of [Goodwin] just receiving one week during only the Christmas break.

Goodwin's Brief at 18-19 (emphasis added).

We have emphasized the word "hereby" in the above quote because this issue was not raised below and is argued for the first time on appeal. Goodwin did not request additional findings regarding the circuit court's parenting time schedule, nor does she cite when, or in what manner, she contested its appropriateness below.[3] Accordingly, this issue has not been properly preserved

---

[3] Carol Otis Goodwin's brief does not provide a statement regarding the record below showing when and where this issue was properly preserved for review on appeal as required by Kentucky Rules of Appellate Procedure 32(A)(4).

for review on appeal. CR 52.04; *Johnson v. Johnson*, 232 S.W.3d 571, 575 (Ky. App. 2007). *See also Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011) (explaining "a judge must make findings of fact and not address the matter in a perfunctory manner, but if he misses *only some key fact in his findings*, the litigant must assist the court in its good faith efforts to comply with the rule [CR 52.04] by requesting that specific finding." (Emphasis added)). Regardless of Goodwin's failure to properly preserve this issue for review, we nonetheless conclude the circuit court sufficiently complied with KRS 403.270(2) regarding timesharing.

CONCLUSION

For the foregoing reasons and grounds stated, the orders rendered by the Montgomery Circuit Court on December 16, 2022, January 20, 2023, and February 14, 2023, in the Montgomery Circuit Court are affirmed.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE, REBECCA MASON: |
|---|---|
| Stephen E. Neal<br>Mount Sterling, Kentucky | Kaye L. Leighton<br>Mount Sterling, Kentucky |